UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES S.,[1] | Case No.: 21cv1832-BEN (MSB) |
| Plaintiff, | **REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW OF THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY [ECF NO. 15]** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

This Report and Recommendation is submitted to the Honorable Roger T. Benitez, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. On October 28, 2021, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits. (ECF No. 1.)

---

[1]  Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

1    Now pending before the Court is the parties' joint motion for judicial review of

2  the final decision of the Commissioner of Social Security ("Joint Motion").  (ECF No. 15.)

3  For the reasons set forth below, the Court **RECOMMENDS** that Judgment be entered

4  **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further

5  administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

### I.    PROCEDURAL BACKGROUND

7    On January 30, 2020, Plaintiff filed an application for disability insurance benefits

8  under Title II of the Social Security Act, alleging an inability to work since January 25,

9  2020.  (Certified Admin. R. ("AR") 171-74.)  After his application was denied initially and

10  upon reconsideration, (AR 100, 106-07), Plaintiff requested an administrative hearing,

11  (AR 113-14).  Administrative law judge ("ALJ") Randolph Schum held a telephonic

12  hearing on January 29, 2021.  (AR 39-66.)  Plaintiff appeared at the hearing with counsel,

13  and both Plaintiff and a vocational expert ("VE") testified.  (AR 39-66.)

14    As reflected in the February 24, 2021, hearing decision, the ALJ found Plaintiff had

15  not been disabled, as defined in the Social Security Act, from September 21, 2019, the

16  amended alleged onset date[2], through the date of the decision.  (AR 34.)  The Appeals

17  Council denied Plaintiff's request for review on September 9, 2021, rendering the ALJ's

18  decision the Commissioner's final decision.  (AR 1); 42 U.S.C. § 405(h).  On October 28,

19  2021, Plaintiff timely filed the instant civil action.  (See ECF No. 1.)

### II.    SUMMARY OF THE ALJ'S FINDINGS

21    In rendering his decision, the ALJ followed the Commissioner's five-step

22  sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found

23  Plaintiff had "not engaged in substantial gainful activity since September 21, 2019, the

24  amended alleged onset date."  (AR 25.)  At step two, the ALJ found Plaintiff had "the

25  following severe impairments: degenerative changes of the lumbar spine; history of

---

[2] The parties clarified that the original onset date was written in error and the correct onset date is September 29, 2021, during the administrative hearing.  (See AR 56.)

1    bilateral knee replacements; and plantar spur of the left ankle."  (AR 25.)  At step three,

2    the ALJ found that Plaintiff did not have an impairment or combination of impairments

3    that met or medically equaled the severity of one of the impairments listed in the

4    Commissioner's Listing of Impairments.  (AR 27.)

5        Next, the ALJ determined that Plaintiff had the residual functional capacity

6    ("RFC") to "perform light work as defined in 20 C.F.R. § 404.1567(b) except he should

7    never climb ropes, ladders or scaffolds; occasionally climb ramps and stairs, balance,

8    stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme

9    cold, vibration, unprotected heights, and moving and dangerous machinery."  (AR 27.)

10       At step four, the ALJ compared Plaintiff's RFC to the physical and mental

11   demands of his past relevant work.  (AR 33-34.)  The ALJ found that because

12   Plaintiff could perform past relevant work as a pastoral assistant or general

13   merchandise salesperson as generally performed in the national economy, he was

14   not disabled.  (AR 33-34.)

### III.  DISPUTED ISSUES

16       As reflected in the parties' Joint Motion, Plaintiff is raising one issue as the basis

17   for reversal and remand: that the ALJ improperly considered Plaintiff's subjective

18   symptom testimony.  (ECF No. 15 at 4.)

### IV.  STANDARD OF REVIEW

20       Section 405(g) of the Social Security Act allows unsuccessful applicants to seek

21   judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of

22   judicial review is limited, and the denial of benefits will not be disturbed if it is

23   supported by substantial evidence in the record and contains no legal error.  Id.; Buck v.

24   Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing Molina v. Astrue, 674 F.3d 1104,

25   1110 (9th Cir. 2012) (citation omitted)).

26       "Substantial evidence means more than a mere scintilla but less than a

27   preponderance.  It means such relevant evidence as a reasonable mind might accept as

28   adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017)

1   (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir.

2   1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where the evidence is

3   susceptible to more than one rational interpretation, the ALJ's decision must be upheld.

4   Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  This includes deferring to

5   the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v.

6   Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds that

7   substantial evidence supports the ALJ's conclusions, the court must set aside the

8   decision if the ALJ failed to apply the proper legal standards in weighing the evidence

9   and reaching his or her decision.  See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190,

10  1193 (9th Cir. 2004).

## V.  DISCUSSION

11

12  **A.      The ALJ Did Not Properly Consider Plaintiff's Subjective Symptom Testimony**

13          Plaintiff argues that the ALJ failed to articulate specific, clear, and convincing

14  reasons for rejecting Plaintiff's subjective symptom testimony.  (ECF No. 15 at 4.)

15  According to Plaintiff, the ALJ's discussion of the medical evidence is a mere recitation,

16  without the required analysis of how the medical evidence is incompatible with

17  Plaintiff's testimony.  (Id. at 8-9.)  Further, Plaintiff argues that the ALJ incorrectly

18  concludes Plaintiff's condition has responded to treatment and does not explain how

19  this alleged improvement conflicts with Plaintiff's pain and symptom testimony.  (Id. at

20  10.)

21          The Commissioner contends that the ALJ followed the correct legal standard for

22  evaluating Plaintiff's subjective statements about symptoms and made sufficiently

23  specific findings.  (Id. at 13.)  More specifically, the Commissioner argues that the ALJ

24  considered the consistency of Plaintiff's testimony with the objective medical evidence

25  and found that Plaintiff's subjective complaints were not fully supported.  (Id. at 14.)

26  / / /

27  / / /

28  / / /

### 1.    Applicable law

When evaluating a claimant's allegations regarding subjective symptoms such as pain, the ALJ must engage in a two-step analysis.  See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996), superseded, in part, on other grounds by 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 16-3p,[3] 2016 WL 1119029 (Mar. 16, 2016).  First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain alleged, but only that it could have reasonably caused some degree of the pain.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Second, if the first step has been satisfied and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so."  Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15).  "The clear and convincing standard is the most demanding required in Social Security cases."  Revels, 874 F.3d at 648 (quoting Garrison, 759 F.3d at 1014–15).  General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims.  See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).  An ALJ's failure to identify specific

---

[3] SSR 16-3p, which went into effect before the ALJ's decision, rescinded and superseded SSR 96-7p and the former "credibility" language.  The Ninth Circuit noted that the SSR 16-3p "makes clear what [the] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness."  Trevizo, 871 F.3d at 678 (quoting SSR 16-3p).

statements and explain why they are not credible precludes meaningful review because the reviewing court cannot determine if the ALJ's decision was supported by substantial evidence, and therefore constitutes reversible error.  Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015); see also SSR 16-3p.

"[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their medical sources, and observations by the Agency's employees and other persons. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.  Factors the ALJ may consider, in addition to objective medical evidence, include an applicant's daily activities; the location, duration, frequency, and intensity of the complained of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.  The ALJ may also consider inconsistencies between an applicant's statements regarding pain and the medical evidence.  See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p.

### 2. Plaintiff's testimony and the ALJ's treatment thereof

#### a. Relevant testimony during Plaintiff's administrative hearing

In his written opinion, the ALJ adequately summarized the Plaintiff's January 29, 2021, testimony during his administrative law hearing:

[T]he claimant alleged problems with his back from disc collapse.  He alleged constant pain and an inability to sleep through the night, stay in one position, or walk for long periods of time without a cane.  He had knee replacements when he was working as an associate pastor and the last knee was replaced in July 2019.  He alleged problems since the knee replacements, such as weakness and pain.  He alleged that a left ankle spur that has caused pain and prevented him from standing in one place at a time.  He alleged that his back problems affected his shoulder and neck and caused continual pain and loss of sleep.  He was not sure if he had shoulder or neck x-rays since his alleged onset date. He reported that canes were prescribed after his knee

surgeries and alleged that he had been using them ever since.  He alleged that his doctor discussed additional back surgery entailing separating the discs, but he declined it.  He was given a transcutaneous electrical nerve stimulation (TENS) machine and back brace.  He alleged that he could be on his feet for 15 to 20 minutes.  For exercise, he walked to the end of the street and back.  He alleged that he could sit for 15 to 20 minutes at one time.  He lied down for 25 to 30 minutes to relieve pressure on his lower back.  He could lift and carry ten pounds.  He lived with his wife in a single story house.  He did not help with chores around the house.  He did not go grocery shopping on his own due to the standing and walking.  He can bathe and dress himself.  He used handicap bars in the shower.  He could drive for 15 minutes.  On a typical day, he read, watched television, spent time online on the computer, and went for short walks.

(AR 28.)

### b.    Function Report dated March 2020

In his written opinion, the ALJ also adequately summarized Plaintiff's alleged pain and physical dysfunction reported in his March 2020 Pain Questionnaire, as follows:

[T]he claimant alleged back pain since 2005 and bilateral knee pain since 2010 (Ex. 4E/3).  He alleged that the pain was constant, but that it intensified with lifting, bending, twisting, and kneeling (Id.).  He wrote that rest relieved his pain minimally after an hour or two (Id.).  He wrote that he took over-the-counter ibuprofen and that it relieved his pain minimally after an hour (Ex. 4E/3-4).  He wrote that he did not wear or use a device in relieving pain (Ex. 4E/4).  He wrote that he exercised to relieve pain (Id.).  For daily activities, he walked, did light weight training, did moderate household chores, shopped, drove, and socialized (Id.).  He could run errands, walk one fourth of a mile, stand for two hours, sit for two hours, drive his own car, and do light housekeeping chores (Ex. 4E/5).  He alleged the need of assistance with heavy lifting, bending, and kneeling (Id.).

(AR 27-28.)

///

///

///

///

1

### c.    ALJ's treatment of Plaintiff's Testimony

At the beginning of his RFC discussion, the ALJ recited part of the standard for evaluating Plaintiff's pain and symptom testimony.[4]  (AR 27.)  Next, as described above, the ALJ thoroughly summarized Plaintiff's pain and symptom testimony.  (AR 27-28.)  The Court then concluded:

> After careful consideration of the evidence, the undersigned found the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 28.)

In the following pages, the ALJ summarized Plaintiff's medical records, organizing them by each of the severe impairments the ALJ recognized, before noting general examination findings and discussing medical opinions.  (AR 28-32.)  Finally, the ALJ explained that the foregoing supported his RFC determination.  (AR 33.)  He noted in conclusion that Plaintiff had been responsive to treatment for his impairments, had generally normal examination findings stating he was "fully ambulatory with no neurological abnormality," and his limitations "were not severe enough to keep him from working within the functional capacity assessed in this decision."  (AR 33.)

### 3.    Analysis

Neither party contests the ALJ's determination that Plaintiff has the following "severe impairments: degenerative changes of the lumbar spine; history of bilateral knee replacements; and, plantar spur of the left ankle."  (See AR 25; see also ECF No.

---

[4] The Court notes that while he ALJ described the two-step process for evaluating Plaintiff's pain and symptom testimony described in the "Applicable Law" section, supra, he did not identify the requirement that an ALJ articulate clear and convincing reasons for rejecting Plaintiff's testimony in the second step.  (See AR 27.)

15.)  Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.  (AR 28.)  Further, neither party alleges that the ALJ found that Plaintiff was malingering.  (See ECF No. 15.)  Therefore, the Court must determine whether the ALJ identified specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th. Cir. 2014); Molina, 674 F.3d at 1112.

The first problem the Court encounters is the ALJ's failure to identify which of Plaintiff's symptom statements the ALJ discredited.  Though the ALJ summarized Plaintiff's testimony as described above, he never distinguished between the testimony he found credible and the testimony he rejected.  (See AR 27-33.)  When discussing his rejection of some of Plaintiff's testimony, he used the boilerplate statement that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence of record."  (AR 28); see Treichler, 775 F.3d at 1103 (discussing the ALJ's statement that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," and noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction . . . before [identifying] what parts of the claimant's testimony were not credible and why.")

Next, the ALJ summarized and discussed the objective medical evidence and medical opinion evidence, but failed to juxtapose any such evidence against Plaintiff's testimony, either in his discussion of Plaintiff's testimony, or elsewhere in the opinion.  (See AR 27-33.)  "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination."  Brown-Hunter, 806 F.3d at 489.  Similarly, the Court's conclusory language when summarizing his RFC determination, that "[w]hile claimant's conditions may cause him to have some restrictions and

1   limitations with work related activities, the evidence in file indicated those limitations

2   were not severe enough to keep him from working within the residual functional

3   capacity assessed in this decision," does not tell the Court why the ALJ rejected

4   Plaintiff's testimony.  (See AR 33); see also Brown-Hunter, 806 F.3d at 491, 493 (finding

5   that the ALJ erred in concluding that plaintiff's "statements concerning the intensity,

6   persistence and limiting effect of [plaintiff's] symptoms are not credible to the extent

7   they are inconsistent with the [ALJ's] residual functional capacity assessment," where

8   the ALJ did not identify which of the plaintiff's statements were not credible and why).

9       The Commissioner argues that a lack of support in the objective medical evidence

10   and the ALJ's reliance on the prior findings of administrative agency doctors supported

11   the rejection of unspecified portions of Plaintiff's testimony.  (ECF No. 15 at 14-18.)  But

12   as already discussed, the ALJ failed to identify any actual inconsistencies between the

13   medical evidence and Plaintiff's testimony, and as the Commissioner acknowledges, a

14   lack of support, on its own, is not a clear and convincing reason to reject claimant

15   testimony.[5]  (See ECF No. 15 at 14 (stating that consistency between Plaintiff's pain and

16   symptom testimony and the objective medical evidence "could not be the ALJ's sole

17   reason for rejecting Plaintiff's statements about excess symptoms").)  Had the ALJ

------

20   [5] The distinction between medical evidence simply failing to support a plaintiff's testimony and contradicting it is critical because the latter may qualify as a specific, clear, and convincing reason to reject a plaintiff's testimony, while the former does not.  Compare Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding that contradiction with medical records is a sufficient basis for rejecting the claimant's subjective testimony) with Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) as amended on reh'g (Sept. 17, 1997) (finding that the ALJ's sole reason for an adverse credibility determination was legally insufficient when it was premised on lack of medical support for claimant's testimony). See also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006) (describing ALJ's reliance on Plaintiff's testimony being "not consistent with or supported by the overall medical evidence of record" as "exactly the type [of justification] we have previously recognized the regulations prohibit").  In short, a lack of support from medical evidence is a factor the ALJ may consider in his analysis of a plaintiff's testimony, but it cannot be the sole basis for rejecting it.  See Stone v. Berryhill, No. 3:17-CV-1689-W (RNB), 2018 WL 2317549, at *1, *5 (S.D. Cal. May 17, 2018) (finding that ALJ's adverse credibility determination was insufficient because his initial reasons for rejection were legally insufficient and the sole basis remaining for discounting pain testimony was lack of medical support) report and recommendation adopted, 2018 WL 3327873 (S.D. Cal. July 6, 2018).

identified what medical evidence was "not fully consistent" with some part of Plaintiff's testimony, the Court would be able to ascertain whether the ALJ was referring to a lack of support or a direct inconsistency.  While it may be possible to draw inferences about what testimony the ALJ believed was inconsistent based upon the ALJ's summary of the medical evidence and the Court's extensive review of the record, it is the ALJ's exclusive duty to identify those inconsistencies.  See Lambert, 980 F.3d at 1278 (quoting Brown-Hunter, 806 F.3d at 494 ("Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make," and the reviewing court is "constrained to review the reasons the ALJ asserts.")

To the extent the Commissioner argues the ALJ's citation to treatment reports is sufficiently specific to provide notice to the Court of the evidence the ALJ found inconsistent with Plaintiff's testimony, it does not inform the Court of the specific testimony being discredited.  As discussed above, without identifying the specific testimony being discredited, the Court cannot conclude whether the ALJ's decision was supported by substantial evidence.  See Brown-Hunter, 806 F.3d at 489; see also SSR 16-3p.

Nonetheless, the Court reviewed the treatment reports cited by the ALJ and is unpersuaded that the ALJ identified objective medical evidence that is inconsistent with Plaintiff's testimony.  To support his conclusion, the ALJ cited to medical records to show Plaintiff had been treated for his symptoms and responded well to treatment.  (AR 33.)  The ALJ discussed these records during his summary of the medical evidence and specifically pointed out that Plaintiff's motor and sensory examinations were normal. (AR 31.)  However, to the extent the ALJ relies on normal physical examinations in reaching his conclusion, these examinations are not objective evidence that support an adverse credibility determination.

The ALJ cites to reports written by Dr. Kwon before and after Plaintiff had total left knee replacement in July 2019.  (AR 33, 332, 339.)  In both reports, Dr. Kwon noted

Plaintiff had undergone muscle strength examinations on the left knee and the results came back normal.  (AR 332, 339.)  However, in the pre-operative report, Dr. Kwon also noted that Plaintiff's "pain [was] debilitating" and he walked with a gait that [was] antalgic to his left knee.  (AR 331-32.)  Similarly, in the post-operative report, Dr. Kwon noted that Plaintiff's gait was still antalgic, which indicated that Plaintiff was experiencing pain.  (AR 339.)  These reports show that while Plaintiff's physical examinations may appear normal, they do not conflict with his reports of pain.  For this reason, normal physical examinations are not a specific, clear, and convincing reason for discrediting Plaintiff's subjective pain allegations.  See also Amaro v. Colvin, 613 F. App'x 615, 617 (9th Cir. 2015) (stating that in discrediting testimony regarding the severity of symptoms because MRIs and X-rays showed mild erosions and synovitis, the ALJ erred and "essentially required [the claimant] to provide 'objective medical evidence of the pain or fatigue itself, or the severity thereof'" and "did not otherwise sufficiently support his adverse credibility finding with specific, clear and convincing reasons").

In addition, ALJs should not take evidence out of context.  See Overton v. Berryhill, No. 17cv25-BEN, 2017 WL 5159550, at *1, *18 (S.D. Cal. Nov. 16, 2017) (finding the ALJ erred when evaluating a plaintiff's credibility by cherry-picking segments of recreational therapy notes and ignoring other segments of the same notes), report and recommendation adopted, 2018 WL 1561315 (S.D. Cal. Mar. 27, 2018).  As discussed above, the Court's review of the record reveals that the ALJ picked out the normal physical examinations and ignored other segments of the reports that were contrary to his conclusion.

Further, a holistic review of the medical evidence indicates that Plaintiff has not responded well to treatment.  The ALJ cites to an October 2019 report from Eric Mosier, D.O., Plaintiff's primary care physician.  (AR 33, see also AR 300.)  In this report, Dr. Mosier noted what the ALJ identified, that he performed a physical examination on Plaintiff and found no clubbing, cyanosis, or edema.  (AR 300.)  However, Dr. Mosier also noted that the reason for Plaintiff's visit was complaints of left ankle pain and in

1   response, Dr. Mosier referred Plaintiff to podiatry and prescribed naproxen.  (AR 300.)

2   This is the only report the ALJ cited to that addresses Plaintiff's ankle pain.  (See AR 33.)

3   The podiatry referral indicates to the Court that Plaintiff had not responded to

4   treatment and required more specialized care.  The ALJ also cited to a November 2019

5   report from Michael McBeth, M.D., who administered a fluoroscopic guided Left L5-S1

6   transforaminal epidural steroid injection to treat Plaintiff for the pain in his lumbar

7   spine.  (AR 33, see also 286.)  However, a July 2021 treatment report from SD

8   Neurosurgery recommended that Plaintiff undergo L5-S1 surgery because conservative

9   care had "not provided sustained relief."[6]  (AR 17.)  Contrary to the ALJ's assertion, this

10  report indicates that the epidural steroid injection the ALJ cited to was unsuccessful in

11  treating Plaintiff's lumbar spine.

12       To summarize, because the ALJ failed to state which of Plaintiff's statements he

13  rejected, and why, the Court cannot conduct meaningful review to determine whether

14  the ALJ's rejection of Plaintiff's subjective symptom testimony was supported by clear

15  and convincing reasons.  See Brown-Hunter, 806 F.3d at 489 (finding that the ALJ

16  committed legal error where "the ALJ failed to identify the testimony she found not

17  credible, [and] did not link that testimony to the particular parts of the record

18  supporting her non-credibility determination."); Burrell, 775 F.3d at 1139 ("the ALJ did

19  not make a specific finding linking a lack of medical records to [c]laimant's testimony

20  about the intensity of her back, neck, and head pain").  This failure was a legal error that

21  prevents the Court from determining whether the ALJ's decision is supported by

22  substantial evidence and supports a recommendation to remand.

23

24  _____

25  [6] The July 2021 treatment report, which was first submitted as evidence to the Appeals Council in

26  denying Plaintiff's request for review of the ALJ's decision, is part of the administrative record and can
    be considered by this Court.  Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir.

27  2012) (stating that when evidence is submitted to the Appeals Council reviewing the ALJ's decision, the
    new evidence is part of the administrative record, which the district court must consider in

28  determining whether the Commissioner's decision is supported by substantial evidence).

## VI. CONCLUSION AND RECOMMENDATION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  The reviewing court has discretion in determining whether to remand for further proceedings or award benefits.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).

In this case, Plaintiff requests "an order from the Court reversing the final decision and awarding benefits."  (ECF No. 15 at 19.)  In the alternative, Plaintiff argues "the Court should remand for further proceedings."  (Id.)  Defendant asks the Court to affirm the Commissioner's final decision, or if the Court finds the ALJ erred, "Defendant respectfully requests that the Court remand for further administrative proceedings."  (Id. at 20-22.)  The Court concludes that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision.  Specifically, the Court **RECOMMENDS** that, upon remand, Plaintiff's subjective pain and physical dysfunction testimony be reexamined, consistent with this Report and Recommendation, and the applicable clear and convincing standard.

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS ORDERED** that no later than **March 29, 2023**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 12, 2023**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  March 15, 2023

_____
Honorable Michael S. Berg
United States Magistrate Judge

21cv1832-BEN (MSB)